UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAMARK WILLIAMS,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK, POLICE OFFICER
LUIS A. SEGURA, POLICE OFFICER OSVALDO
J. GARCIA, P.O. AMANDY FELIZ, P.O. DARIO
ALBANLUDENA,

                                        Defendants.

---

Case No. 1:23-cv-02936 (JLR)
(HJR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Shamark Williams, proceeding *pro se*, brings false arrest, malicious prosecution, and

excessive force claims under 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment, and the

Fourteenth Amendment against the City of New York, Police Officer Luis A. Segura, Police

Officer Osvaldo J. Garcia, Police Officer Amandy Feliz, and Police Officer Dario

Albanludena.  Dkt. 19 ("AC").  Defendants City of New York (the "City"), Segura, and

Garcia (together, "Individual Defendants" and, collectively with the City, "Defendants") now

move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For

the reasons that follow, the Court GRANTS the motion for summary judgment in part and

DENIES it in part.

## BACKGROUND

Except where noted, the following facts are undisputed and drawn from the parties'

Rule 56.1 Statements and Responses,[1] *see* Dkt. 46 ("Df. SUF"); Dkt. 51 ("Pl. RSUF");

---

[1] Plaintiff did not comply with Local Rule 56.1 in responding to Defendants' Rule 56.1
statement or in submitting his own counterstatement of facts, since his submissions largely did
not cite to evidence "that would be admissible and set forth as required by [Rule] 56(c)."  Loc.
Civ. R. 56.1(d); *see, e.g.*, Pl. RSUF ¶¶ 2, 5-7; Pl. SUF.  Normally, a nonmoving party's failure

Dkt. 53 ("Second Pl. RSUF"); Dkt. 54 ("Pl. SUF"); Dkt. 59 ("Df. RSUF"), the declaration of

Joseph Zangrilli and the exhibits attached thereto, *see* Dkt. 44 ("Zangrilli Decl."); Dkts. 44-1

to 44-11, and Plaintiff's affidavits and the videos attached thereto, *see* Dkt. 63 ("Pl. Aff.");

Dkt. 64 ("Second Pl. Aff").[2]

---

to specifically controvert statements of material fact with citation to admissible evidence
would result in those facts being admitted. *See Giannullo v. City of New York*, 322 F.3d 139,
140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the
moving party's Rule 56.1 statement, that fact will be deemed admitted."); *Cruz v. N.Y.C.
Transit Auth.*, No. 23-cv-05272 (JLR), 2025 WL 551809, at *2 (S.D.N.Y. Feb. 19, 2025)
(treating facts as undisputed and admitted where the nonmoving party did not specifically
controvert the facts set forth in the moving party's rule 56.1 statement with citation to
evidence). "While *pro se* litigants are 'not excused from meeting the requirements of Local
Rule 56.1,' the Court nonetheless 'retains some discretion to consider the substance of the
[*pro se* party's] arguments, where actually supported by evidentiary submissions.'" *Betts v.
Rodriguez*, No. 15-cv-03836 (JPO), 2017 WL 2124443, at *1 n.1 (S.D.N.Y. May 15, 2017)
(alteration in original) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y.
2009)). Thus, in light of the "special solicitude" afforded to *pro se* litigants "when confronted
with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1998),
the Court has "in its discretion opt[ed] to conduct an assiduous review of the [entire] record"
in resolving the instant motion, *Gunn v. Milani*, No. 20-cv-02681 (KMK), 2024 WL 4124319,
at *1 n.2 (S.D.N.Y. Sept. 9, 2024) (alterations in original) (quoting *Smolen v. Brown*, No. 18-
cv-07621 (KMK), 2023 WL 6199094, at *1 n.1 (S.D.N.Y. Sept. 22, 2023)); *see, e.g., Cherry
Byram Hills Cent. Sch. Dist.*, No. 11-cv-03872 (ER), 2013 WL 2922483, at *1 (S.D.N.Y. June
14, 2013) ("[W]here a *pro se* plaintiff fails to submit a proper . . . Rule 56.1 statement in
opposition to a summary judgment motion, the Court retains some discretion to consider the
substance of the plaintiff's arguments, where actually supported by evidentiary submissions."
(internal quotation marks omitted)); *Galberth v. Washington*, No. 14-cv-00691 (KPF), 2017
WL 3278921, at *1 n.1 (S.D.N.Y. July 31, 2017) ("[B]ecause [p]laintiff is proceeding *pro se*,
'this Court has conducted an assiduous review of the record to determine if there is any
evidentiary support for his assertions of fact that do not cite to evidence and to determine if
there are any other material issues of fact.'" (quoting *Betts*, 2017 WL 2124443, at *1 n.1)),
*aff'd*, 743 F. App'x 749 (2d Cir. 2018) (summary order).

[2] Plaintiff submitted numerous videos and photographs in connection with his opposition to
the motion for summary judgment, but did not label them as exhibits. For ease of reference,
the Court will refer to these videos as Plaintiff exhibits or "PX". *See* [2020-08-27_09-32-
08.AVI] (CD-ROM, last modified Aug. 28, 2024) (on file with the Court) ("PX 1"); [2020-
08-27_09-32-10.AVI] (CD-ROM, last modified August 28, 2024) (on file with the Court)
("PX 2"); [2020-08-27_09-32-10-2.AVI] (CD-ROM, last modified August 28, 2024) (on file
with the Court) ("PX 3"); [2020-08-27_09-32-10-3.AVI] (CD-ROM, last modified August 28,
2024) (on file with the Court) ("PX 4"); [2020-08-27_09-32-16.AVI] (CD-ROM, last

## I.    Factual Background

At approximately 9:27 a.m. on August 27, 2020, Richard Watson called 911 and

reported an assault at his apartment at 530 W 178th Street, New York, New York.  Pl.

RSUF ¶ 1; Dkt. 44-9 at 3.  Watson told the 911 operator that Plaintiff, who also lived in the

building and against whom Watson claimed to have a restraining order, had punched him in

the face and neck over an accusation of theft.  Pl. RSUF ¶ 2; Dkt. 44-6 ("Pl. Dep. Tr.") 22:15-

---

modified August 28, 2024) (on file with the Court) ("PX 5"); [2020-08-27_09-35-28.AVI]
(CD-ROM, last modified August 28, 2024) (on file with the Court) ("PX 6"); [2020-08-27_09-35-28-2.AVI] (CD-ROM, last modified August 28, 2024) (on file with the Court)
("PX 7"); [2020-08-27_09-35-28-3 – Segura [Redacted].mp4] (CD-ROM, last modified
December 20, 2024) (on file with the Court) ("PX 8"); [2020-08-27_09-35-28-3.AVI] (CD-ROM, last modified August 28, 2024) (on file with the Court) ("PX 9"); [2020-08-27_09-35-30.AVI] (CD-ROM, last modified August 28, 2024) (on file with the Court) ("PX 10");
[2020-08-27_09-35-44.AVI] (CD-ROM, last modified August 28, 2024) (on file with the
Court) ("PX 11"); [2020-08-27_09-35-48.AVI] (CD-ROM, last modified August 28, 2024)
(on file with the Court) ("PX 12"); [2020-08-27_09-35-48-2.AVI] (CD-ROM, last modified
August 28, 2024) (on file with the Court) ("PX 13 at"); [2020-08-27_09-37-56.AVI] (CD-ROM, last modified August 28, 2024) (on file with the Court) ("PX 14"); [2020-08-27_09-38-08.AVI] (CD-ROM, last modified August 28, 2024) (on file with the Court) ("PX 15");
[2020-08-27_09-38-34.AVI] (CD-ROM, last modified August 28, 2024) (on file with the
Court) ("PX 16"); [2020-08-27_09-51-04.AVI] (CD-ROM, last modified August 28, 2024)
(on file with the Court) ("PX 17"); [2020-08-27_09-51-18.AVI] (CD-ROM, last modified
August 28, 2024) (on file with the Court) ("PX 18"); [2020-08-27_09-51-20.AVI] (CD-ROM,
last modified August 28, 2024) (on file with the Court) ("PX 19"); [20200901_142432
injuries.jpg] (CD-ROM, last modified April 8, 2023) (on file with the Court) ("PX 20");
[20200901_142442 injuries.jpg] (CD-ROM, last modified April 8, 2023) (on file with the
Court) ("PX 21"); [20200901_142452 injuries.jpg] (CD-ROM, last modified April 8, 2023)
(on file with the Court) ("PX 22"); [20200901_142455 injuries.jpg] (CD-ROM, last modified
April 8, 2023) (on file with the Court) ("PX 23"); [20200905_122916 injuries.jpg] (CD-ROM,
last modified April 8, 2023) (on file with the Court) ("PX 24"); [20200905_122922
injuries.jpg] (CD-ROM, last modified April 8, 2023) (on file with the Court) ("PX 25");
[20200905_122928 injuries.jpg] (CD-ROM, last modified April 8, 2023) (on file with the
Court) ("PX 26"); [20200905_122934 injuries.jpg] (CD-ROM, last modified April 8, 2023)
(on file with the Court) ("PX 27"); [20200905_122939 injuries.jpg] (CD-ROM, last modified
April 8, 2023) (on file with the Court) ("PX 28"); [20200907_095144 injuries.jpg] (CD-ROM,
last modified April 8, 2023) (on file with the Court) ("PX 29"); [20201116_082826.mp4]
(CD-ROM, last modified April 19, 2023) (on file with the Court) ("PX 30"); [Williams-1_911
Call [redacted].WAV] (CD-ROM, last modified November 8, 2024) (on file with the Court)
("PX 31").

3

20, Dkt. 44-3 ("911 Call") 0:00-0:20.  Watson told the 911 operator that he felt dizzy and had a twisted neck, and requested both police and ambulance assistance.  Pl. RSUF ¶ 2; 911 Call 0:20-0:27.  Watson also stated that there were "no weapons involved."  911 Call 0:50-0:53.  Watson identified his assailant as "Shawn Williams," a black man, but could not remember what his attacker was wearing.  911 Call 1:05-1:22.

Officers Segura and Garcia were working in the 33rd Precinct when they responded to a 911 call for an assault in progress at 530 W 178th Street, New York, New York, at approximately 9:29 a.m.  Pl. RSUF ¶ 3; Dkt. 44-9 at 3, 5.  When Garcia and Segura arrived at 530 W 178th Street, Segura spoke with Watson.  Pl. RSUF ¶ 4; *see also* 911 Call 3:14-23; PX 1 to 5.  None of the submitted body-worn camera footage captures the audio of this conversation.  *See* PX 1 to 5.

Segura then spoke with Plaintiff, who was standing on the apartment building's front steps.  Pl. RSUF ¶ 6; PX 6.  Segura's body-worn camera footage begins partly through this conversation.  *See* Dkt. 44-4 ("Segura BWC") 0:00-0:29.  Segura informed Plaintiff that the officers had been "called for an assault."  Segura BWC 0:29-0:34.  In response, Plaintiff told Segura that he "[didn't] care what you got called for," and told Segura to "get the fuck out my face."  Segura BWC 0:30-0:39.  Segura repeatedly asked Plaintiff to "lower your voice," but Plaintiff responded that he didn't "have to lower nothing" and told Segura several times to "get the fuck out my face."  Segura BWC 0:35-0:43.  Segura then told Plaintiff to go back inside and go to his apartment.  Segura BWC 0:40-0:56 .  Segura's body-worn camera footage shows Plaintiff getting close to Segura during this exchange.  Segura BWC 0:40-0:52.  As Plaintiff drew nearer, Segura told him to "step off" and "keep his distance."  PX 6 0:35-0:48.  After Plaintiff refused to "step off," Segura moved away from the door and told Plaintiff to go back inside, which Plaintiff also refused to do.  Segura BWC 0:50-0:59; PX 6 at 0:41-0:52 .

Segura repeated his direction to Plaintiff to go inside and to his apartment.  Segura BWC
0:50-1:01.  Segura's body-worn camera footage shows that Segura touched Plaintiff's right
arm with his right hand; in response, Plaintiff shook off Segura's hand and yelled "get off me"
and "get the fuck off me" repeatedly.  Segura BWC 0:59-1:03.  Another officer gripped
Plaintiff's left forearm while Segura and other officers told Plaintiff to relax and go inside to
his apartment.  Segura BWC 0:59-1:23; PX 6 at 1:03-1:07.  Plaintiff then yelled "take me to
fucking jail, and I'm a sue you again."  PX 6 at 1:07-1:10.  Segura again told Plaintiff to go
inside to his apartment; Plaintiff again refused.  PX 6 at 1:07-1:29.

Segura then pointed inside the apartment building and stated, "he said you punched
him in the face, right."  Segura BWC 1:23-1:32.  Plaintiff responded, "who you talking
'bout."  Segura BWC 1:32-1:33.  Segura then walked past Plaintiff to enter the apartment
building and approached Watson, who was standing a few feet inside.  Segura BWC 1:32-
1:41.  Segura asked Watson what Plaintiff had done to him.  Pl. RSUF ¶ 12; Segura BWC
1:35-1:41.  Watson told Segura that Plaintiff hit him in the right side of his face at his door
and that he was in pain.  Pl. RSUF ¶ 13.  Segura asked what "he hit," and Watson pointed at
the right side of his face and said Plaintiff hit him "right here."  Segura BWC 1:40-1:43.
Watson again identified Plaintiff as the individual who hit him.  Pl. RSUF ¶ 14.

Segura then walked back outside, where Plaintiff could be heard saying, "you can't
arrest me, because my neighbor was upstairs. . . . I didn't even touch that dude."  Segura
BWC 1:50-1:55.  Segura told Plaintiff to place his hands behind his back and that he was
under arrest because he had "punched [Watson] in the face."  Segura BWC 1:55-1:59; Pl.
RSUF ¶ 15.  Plaintiff refused to follow the direction to put his hands behind his back and
repeatedly said "I'm not doing nothing," "you can't prove that I did anything to him," and
"I've got a witness."  Segura BWC 1:58-2:12.

After about twenty seconds, Segura repeated the instruction for Plaintiff to put his hands behind his back as nonparty Officer Pulgarin, who was standing to Plaintiff's left, grasped his left arm and tried to move it behind his back. Pl. RSUF ¶ 18; Segura BWC 2:12-2:35. At the same time, Segura took hold of Plaintiff's right arm, told him to put his hands behind his back, and tried to handcuff Plaintiff's right wrist. Segura BWC 2:12-2:15. Segura's body-worn camera footage shows other officers surrounding Plaintiff and grabbing his arms as he began to push the officers away. Segura BWC 2:15-2:21. Segura and several officers pushed Plaintiff through of the open front door of the building into a smaller vestibule area. PX 6 at 2:00-2:22. Segura repeatedly told Plaintiff to relax, but Plaintiff continued to push against the officers and shouted "get off me." Segura BWC 2:15-2:20. Segura warned him he was going to get tased. Segura BWC 2:15-2:21. Garcia and nonparty Officer Habersham then tased Plaintiff on his chest and stomach as Segura tried to handcuff his right arm. Segura BWC 2:22-2:25; PX 13 at 2:00-2:07; *see* Pl. RSUF ¶ 21. Plaintiff, who at this point was standing with his back against the wall while officers attempted to handcuff him, shouted "come on, stop tasing me." Segura BWC 2:25-2:33; PX 6 at 2:22-2:27. The officers pushed Plaintiff against the doorframe and handcuffed Plaintiff's right arm. Segura BWC 2:30-2:35; PX 13 at 2:07-2:10. Plaintiff and the officers continued to be engaged in a struggle, Segura told Plaintiff to give him his left arm, another officer told him "don't resist," and Garcia tased Plaintiff again for around ten seconds. Segura BWC 2:25-2:40; PX 13 at 2:10-2:21. As Garcia tased Plaintiff's back, Plaintiff shouted "that's my back, too much, man." PX 13 at 2:14-2:18. Segura then handcuffed Plaintiff's right arm and told Garcia "that's it," at which point Garcia stopped tasing Plaintiff. Segura BWC 2:40-2:45. As Segura secured the handcuffs on Plaintiff, Plaintiff declared that he had a lawsuit against the officers. Segura BWC 2:45-2:48; Pl. RSUF ¶ 25.

As Segura escorted Plaintiff to the patrol vehicle, Plaintiff pushed against Segura with his arm and elbow while yelling "get the fuck off." Pl. RSUF ¶ 28. Officers tried to take Plaintiff's keys from his hand before he got in the patrol vehicle, but Plaintiff refused to release them at first and said "get off my keys." Segura BWC 3:20-3:32. After repeated instructions from Segura, Plaintiff dropped his keys. Segura BWC 3:30-3:38. Segura and other officers then placed Plaintiff in the police vehicle and closed the door. Segura BWC 3:38-4:00. Plaintiff testified that when he got into the car, his handcuffs got tighter because the officers had not put the safety lock on the handcuffs. Pl. Dep. Tr. 72:7-13. Plaintiff complained that the handcuffs were too tight, but the officers did not do anything and instead told him to "try not to move too much." Pl. Dep. Tr. 72:3-24.

Segura then spoke to Watson again in an ambulance outside the apartment building. Pl. RSUF ¶ 26; Segura BWC 4:49-5:50. Watson stated that he was sleeping when he heard someone banging on his door, and that when he opened the door, Plaintiff punched him in the face. Pl. RSUF ¶ 26. Watson confirmed that his neck and the right side of his face were hurt. Segura BWC 5:00-5:15. Segura then went inside the apartment building and spoke with an unidentified man in the building's front office, who told Segura that there was an ongoing dispute between Plaintiff and Watson that had "finally escalated to this." Segura BWC 7:50-8:56.

Plaintiff was taken to the 33rd Precinct and charged with two counts of assault in the third degree, one count of aggravated harassment in the second degree, attempted assault in the third degree, resisting arrest, and harassment in the second degree. Pl. RSUF ¶¶ 27, 31.

As Plaintiff was processed, he objected to an officer "touching [his] zipper." Segura BWC 24:19-24:20.[3]

At the precinct, Plaintiff complained that he felt chest pains and was examined by EMS while in a holding cell. Pl. RSUF ¶ 32. Plaintiff told the EMS providers that he was tazed on his side and his back, had bruises, and smelled his skin burning when he got tazed. Segura BWC 30:30-31:10; Pl. Dep. Tr. 27:2-8. However, Plaintiff's medical records reflect that he did not have any "puncture wounds" on his left side or "burns" when admitted to the hospital after his arrest. Dkt. 44-11 at 8. Further, Segura's body-worn camera video reflects that the EMS medics did not find anything "visible" when they inspected his chest, back, and side at the precinct. Segura BWC 30:30-33:14; *see Kunik v. N.Y.C. Dep't of Educ.*, 436 F. Supp. 3d 684, 695 (S.D.N.Y. 2020) (plaintiff's "self-serving comments from her deposition" could not "create an issue of fact"), *aff'd*, 842 F. App'x 668 (2d Cir. 2021) (summary order); *Walton v. Lee*, No. 15-cv-03080 (PGG), 2019 WL 1437912, at *8 (S.D.N.Y. Mar. 29, 2019) (where there was no evidence of injuries to plaintiff "in any contemporaneous medical reports

---

[3] Plaintiff's Rule 56.1 response states (without citation to evidence) that as he was processed, an officer kept hitting him in his testicles and penis, that he told the officer to stop, and that there is video of it. Pl. RSUF ¶ 31. In his deposition, Plaintiff repeated this claim and testified that he told a sergeant, who was recording with her body-worn camera, to "[t]ell [the] officer to stop hitting me in my crotch area," and that the officer was hitting him in his testicles. Pl. Dep. Tr. 83:24-84:3. However, Segura's body-worn camera footage, which recorded Plaintiff being processed, contradicts Plaintiff's version of events. At most, Plaintiff can be heard telling an officer to "stop touching my zipper," Segura BWC 24:19-24:50, but the recording does not indicate that Plaintiff ever complained that an officer was hitting his penis or testicles. Where a party's statement of fact is "blatantly contradicted" by the video evidence, the Court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The Court thus disregards Plaintiff's version of this event. *See, e.g.*, *Davis v. Murphy*, No. 12-cv-03297 (PGG), 2018 WL 10070524, at *9 (S.D.N.Y. Sept. 24, 2018) (crediting video evidence where the video blatantly contradicted a defendant's "self-serving testimony").

or any other part of the record," plaintiff's deposition testimony was insufficient to raise an issue of fact).

An EMS medic took his blood pressure, which Plaintiff told him would be high from "this whole situation." Segura BWC 31:10-31:15. Plaintiff also complained in front of Segura, as well as two EMS medics and at least four officers, that his handcuffs were too tight and the officers were refusing to loosen them. Segura BWC 33:10-33:27.

Plaintiff was later transported to New York-Presbyterian Hospital. Pl. RSUF ¶ 34. At the hospital, Plaintiff reported that he was tased on his left chest and abdomen multiple times, had his left arm internally rotated, and felt pain along his entire left trunk and tingling in his left hand. Dkt. 44-11 at 6. The medical records show that, on intake, "[c]uff marks [were] noted on [his] left wrist" and that there was "[l]ikely neuropraxia," or nerve damage, in that wrist. Dkt. 44-11 at 8-9. Plaintiff exhibited elevated troponins that the supervising doctor believed was stress-induced, as well as tachycardia (an elevated heart rate). Dkt. 44-11 at 6. The discharge summary indicates that Plaintiff "reported that he noticed some L[eft] wrist tenderness where his hand cuff was following an abrupt movement of his body," but that an X-ray "revealed no evidence of fracture or even soft tissue edema," and that the doctors "[a]dvised Tylenol, ice and compression." Dkt. 44-11 at 14. Plaintiff was discharged on August 28, 2020, and his medical records note that his "[h]ypertension improved as well and chest pain resolved." *Id.* at 14. From there, he went back to the precinct and was then taken to central booking. Pl. Dep. Tr. 28:18-24. Plaintiff testified that he later saw his primary care doctor for surgery to resolve nerve damage in his left hand stemming from his arrest. Pl. Dep. Tr. 121:24-126:4; *see also* PX 30 (video of Plaintiff's left wrist after surgery).

On August 29, 2020, Plaintiff was arraigned in New York Criminal Court on charges of third-degree assault, third-degree attempted assault, resisting arrest, second-degree

aggravated harassment, and second-degree harassment.  Pl. RSUF ¶ 39.  The charges against

Plaintiff were dismissed on speedy trial grounds on November 17, 2021.  Pl. RSUF ¶ 41.

## II.    Procedural History

Plaintiff, proceeding *pro se*, filed this lawsuit on April 7, 2023, asserting claims under

42 U.S.C. §§ 1983 and 1988, the Fourth Amendment, and the Fourteenth Amendment against

Garcia, Police Officers John Does 1-20, Segura, and the City of New York.  Dkt. 1.  On April

10, 2023, Plaintiff was granted leave to proceed *in forma pauperis*.  Dkt. 4.  After the City

complied with the Court's *Valentin* Order, *see* Dkts. 7, 14, Plaintiff filed an Amended

Complaint on August 18, 2023, substituting the Doe Officers with Officers Albanludena and

Feliz.  *See generally* AC.

Defendants moved for summary judgment on December 20, 2024.  Dkt. 43; Dkt. 45

("Br.").  Plaintiff did not file his opposition by the deadline set forth in the parties' agreed-

upon briefing schedule, and the Court granted Plaintiff an extension to February 7, 2025.

Dkt. 50.  Plaintiff filed a first Rule 56.1 Response on January 31, 2025, *see* Pl. RSUF, a

second Rule 56.1 Response on February 7, 2025, *see* Second Pl. RSUF, and a

counterstatement of facts on February 7, 2025, *see* Pl. SUF.  Plaintiff did not file a

memorandum of law with his Rule 56.1 statements.  Defendants filed their reply on February

27, 2025.  Dkt. 58 ("Reply"); Df. RSUF.

After Defendants submitted their reply, the Court received a letter from Plaintiff about

a video he wanted to submit to the Court.  Dkt. 61.  The Court construed this letter as a

request to supplement his opposition and permitted Plaintiff to do so in light of his *pro se*

status.  Dkt. 62.  The Court directed Plaintiff to submit any video footage, along with an

affidavit describing the video, to the Court and opposing counsel by March 14, 2025.  Dkt. 62.

Plaintiff filed identical affidavits on March 12, 2025, and March 14, 2025, and also sent video footage and photographs to the Court. *See generally* Pl. Aff.; Second Pl. Aff.; PX 1 to 30.

## LEGAL STANDARD

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or defense, the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law.' A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024). In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (citation omitted) (internal quotation marks omitted). To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When, as here, a *pro se* litigant is involved, "the same standards for summary judgment apply," *Williams v. Savoy*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015), but "[p]ro se litigants receive 'special solicitude' when 'confronted with motions for summary judgment,'" *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (quoting *Graham v. Lewinski*, 848 F.2d

343, 344 (2d Cir. 1988)).  The Court "liberally construe[s] pleadings and briefs submitted by

pro se litigants, reading such submissions to raise the strongest arguments they suggest."  *Id.*

(quoting *Publica v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)).

**DISCUSSION**

### I.  Excessive Force

Plaintiff alleges that Seguro, Garcia, and the other officers "attacked" him while

arresting him.  AC at 7.  Specifically, he alleges that Segura engaged in a "physical hands-on

confrontation to provoke" Plaintiff; that Segura, Garcia, and "between 1-20" other officers

then attacked [Plaintiff] and caused severe injuries," resulting in "open surgery on his left

hand to repair nerve damage."  *Id.*  Plaintiff also alleges that officers tased him "multiple

times during the attack," requiring him to be hospitalized due to chest pain and leaving him

with "burn marks on his right . . . hand."  *Id.*  Having reviewed Plaintiff's submissions, the

Court construes Plaintiff as bringing an excessive force claim against Garcia and Segura based

on the use of a taser in Plaintiff's arrest, and an excessive force claim against Segura related to

his handcuffing of Plaintiff.  Defendants move for summary judgment on Plaintiff's excessive

force claims.  Br. at 9-12.  The Court will examine the various components of each of

Plaintiff's excessive force claims in turn.

### A.  Taser Usage

Plaintiff alleges that Defendants subjected him to excessive force during his arrest

because he was "tased multiple times."  AC at 7.  Defendants argues that Garcia and Segura

are entitled to summary judgment on the tasing excessive force claims.  Br. at 8-11, 13-15.

#### 1.  *Defendant Garcia*

Defendants admit that Garcia tased Plaintiff at least twice, *see* Pl. RSUF ¶¶ 21, 23, but

move for summary judgment on Plaintiff's claim of excessive force against Garcia on the

12

ground that the force he used was reasonable under the circumstances and that, in the
alternative, he is entitled to qualified immunity.  Br. at 8-11, 13-15.

"The Fourth Amendment prohibits the use of excessive force in making an arrest,"
*Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (*Brown I*)  and "[w]hether an
officer has violated" a plaintiff's Fourth Amendment rights "requires a balancing of 'the
nature and quality of the intrusion on the individual's Fourth Amendment interests against the
importance of the governmental interests alleged to justify the intrusion,'" *Linton v. Zorn*, 135
F.4th 19, 31 (2d Cir. 2025) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).
The Court evaluates whether the "force used is excessive . . .  under th[e Fourth]
Amendment's 'reasonableness' standard. " *Brown I*, 798 F.3d at 100 (quoting *Graham v.
Connor*, 490 U.S. 386, 395 (1989)).  To determine whether the force applied was
unreasonable, the Court considers the *Graham* factors: "(1) the nature and severity of the
crime leading to the arrest, (2)'whether the suspect pose[d] an immediate threat to the safety
of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting
to evade arrest by flight.'"  *Linton*, 135 F.4th at 31 (alteration in original) (quoting *Tracy v.
Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)); *see Graham*, 490 U.S. at 396.  The
reasonableness inquiry requires the Court "to view officers' actions 'in light of the facts and
circumstances confronting them, without regard to their underlying intent or motivation' or
'the 20/20 vision of hindsight.'"  *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir.
2019) (quoting *Graham*, 490 U.S. at 396-97).  Thus, "the reasonableness of the amount of
force used is assessed 'at the moment' the force is used."  *Jones v. Treubig*, 963 F.3d 214, 236
(2d Cir. 2020) (quoting *Graham*, 490 U.S. at 396).

The Second Circuit has been clear that "the use of a taser, like pepper spray,
constitutes significant force."  *Jones*, 963 F.3d at 226 (collecting cases).  The record reflects

that after Segura told Plaintiff he was under arrest, Plaintiff did not put his arms behind his

back as directed and instead pushed and shouted at the officers as they tried to handcuff him.

Pl. RSUF ¶¶ 15-19; Segura BWC 1:55-2:21.  Segura warned Plaintiff that he would be tased.

*Id.* ¶ 20.  Plaintiff continued to shout and push against the officers trying to handcuff him, and

Garcia and nonparty Officer Habersham then tased Plaintiff.  *Id.* ¶ 21; *see also* Segura BWC

1:40-2:25.  The officers handcuffed Plaintiff's right wrist, and Garcia then tased his back for

several seconds while the other officers attempted to handcuff Plaintiff's left wrist.  Df. SUF

¶¶ 22-23.  The Court considers the *Graham* factors to evaluate whether Garcia's use of force

was unreasonable.

　　　The first factor, the severity of the crime at issue, weighs slightly in Plaintiff's favor.

Plaintiff was arrested for third-degree assault, third-degree attempted assault, resisting arrest,

second-degree aggravated harassment, and second-degree harassment, Pl. RSUF ¶ 39, all of

which are misdemeanors or violations under New York law, *see* N.Y. Penal Law §§ 110,

120.00(1)-(2), 195.05, 205.30, 240.26(1), 240.30(4).  On the one hand, the seriousness of the

offense is heightened by the fact that that Plaintiff was accused of punching Watson in the

face, but all of the charged crimes were misdemeanors or violations, which are generally

treated as less serious crimes under the *Graham* analysis, *see, e.g.*, *Ketcham v. City of Mount*

*Vernon*, 992 F.3d 144, 150 (2d Cir. 2021) (first *Graham* factor favored plaintiff because "the

offense [of forcible touching] was a misdemeanor"); *Harris v. Leon*, No. 20-cv-10864 (LGS),

2023 WL 2051171, at *2 (S.D.N.Y. Feb. 16, 2023) (explaining that "[m]isdemeanors are

treated as non-serious crimes for purposes of the *Graham* analysis," and holding that resisting

arrest was a nonsevere crime and first *Graham* factor weighed in Plaintiff's favor);

*Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) (same); *DeGroat*

*v. Buck*, Nos. 22-cv-00507, 22-cv-00516, 2023 WL 4763806, at *6 (N.D.N.Y. July 26, 2023)

(concluding that second-degree attempted assault, a felony under New York law unlike the third-degree attempted assault crime charged here, was a crime of "minor" severity, particularly since the plaintiff was unarmed); *Lewis v. Caraballo*, 98 F.4th 521, 532 (4th Cir. 2024) (finding that misdemeanor assault, which could be considered violent, weighed against the plaintiff, but the finding was tempered because the offense was a misdemeanor). Thus, the first *Graham* factor weighs slightly in Plaintiff's favor.

The Court next considers whether Plaintiff "pose[d] an immediate threat to the safety of the officer or others." *Linton*, 135 F.4th at 31 (alteration in original) (quoting *Tracy*, 623 F.3d at 96). "Courts assessing the threat to officer safety look both to the officers' statements about their perception of a threat and objective factors what would justify such a fear." *Scoma v. City of New York*, No. 16-cv-06693 (KAM), 2021 WL 230295, at *8 (E.D.N.Y. Jan. 22, 2021) (citation omitted). Here, neither Garcia nor Segura provided statements that would give the Court insight into their perception of the threat, if any, posed by Plaintiff; as such, the Court relies on the body-worn camera footage and other undisputed facts in the record. On the one hand, there is no indication that Garcia or any other officer believed Plaintiff was armed, and Plaintiff was outnumbered by the officers. However, the officers were called to the scene of a reported violent incident and the body-worn camera footage shows Plaintiff, a large man, refusing to follow directions, cursing at Segura, and physically struggling with the officers both before and after Segura informed Plaintiff he was under arrest. Segura BWC 1:55-2:21. In light of these circumstances, a reasonable officer could have perceived Plaintiff as an immediate threat to the safety of the officers or others. *See, e.g.*, *Tracy*, 623 F.3d at 97 (reasonable officer could have believed that plaintiff, who struggled with arresting officer, posed a "real and imminent" threat to officer safety); *Mesa v. City of New York*, No. 09-cv-10464 (JPO), 2013 WL 31002, at *19-20 (S.D.N.Y. Jan. 3, 2013) (perception that plaintiff

had made "forcible contact" with officer, even if inadvertent, supported objectively reasonable belief that the plaintiff posed a threat); *Parker v. Santos*, No. 19-cv-06945 (JS) (JMW), 2024 WL 4243663, at *9 (E.D.N.Y. Aug. 15, 2024) (reasonable officer could believe that plaintiff's "abrasive and threatening behavior" posed a threat to others), *report and recommendation adopted sub nom. Parker v. Incorporated Village of Freeport*, 2019 WL 13540727 (E.D.N.Y. Sept. 10, 2024).

Finally, the third *Graham* factor, whether Plaintiff was "actively resisting arrest," weighs in favor of Garcia. Based on Segura's body-worn camera footage, no reasonable jury could fail to conclude that Plaintiff was resisting arrest when Garcia deployed the taser. Resisting arrest includes a range of resistance, from "purely passive" resistance, such as demonstrators chaining themselves together and covering their hands with maple syrup to make arrest more difficult, *see Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123-24 (2d Cir. 2004), or refusing to offer one's hands for handcuffing, *see Brown I*, 798 F.3d at 103, to active resistance, such as "fleeing," "physically attacking an officer," or "even making a move that an officer could reasonably interpret as threatening an attack," *id.* (collecting cases). While Plaintiff claims that he was not resisting arrest and instead was "attacked" by the officers, Pl. RSUF ¶¶ 16, 19, the body-worn camera footage undisputedly shows Plaintiff resisting arrest before the tasing by twisting away from the handcuffs, trying to shake off the officers holding his arms, and refusing to put his arms behind his back for handcuffing. Thus, the third *Graham* factor weighs in Garcia's favor.

The *Graham* factors are not exhaustive, and courts in this Circuit often also consider whether the officers warned the arrestee that a taser would be used, if the officer used the taser in "drive stun" or "dart" mode, and the duration of the taser use. *See, e.g.*, *Vasquez v. Warren*, 630 F. Supp. 3d 524, 537-38 (S.D.N.Y. 2022) (discussing each consideration); *Garcia v.*

16

*Dutchess County*, 43 F. Supp. 3d 281, 294-95 (S.D.N.Y. 2014) ("In addition to the specific

*Graham* factors . . . the Court must also consider any other relevant circumstances . . .

[including] an 'officer's failure to warn' before using a taser . . . ." (quoting *Mattos v.*

*Aragano*, 661 F.3d 433, 451 (9th Cir. 2011))), *aff'd in part, appeal dismissed in part sub nom.*

*Garcia v. Sistarenik*, 603 F. App'x 61 (2d Cir. 2015) (summary order); *Ramos v. Town of East*

*Hartford*, No. 16-cv-00166, 2019 WL 2785594, at *10 (D. Conn. July 2, 2019) (explaining

that even if "the initial use of the taser was reasonable under the circumstances," the court

"must consider the duration of the taser use"); *Whitfield v. City of Newburgh*, No. 08-cv-

08516 (RKE), 2015 WL 9275695, at *17-18 (S.D.N.Y. Dec. 17, 2015) (weighing the "period

of time for which, and the number of times, [the plaintiff] was tasered" in considering

reasonableness of the force).

      Here, Segura warned Plaintiff that a taser would be used before Garcia used the taser.

Segura BWC 2:15-2:21.  Although Plaintiff says he did not hear the warning, Pl. RSUF ¶ 20,

Segura's statement sufficiently warned Plaintiff that a taser would be used.  *See Vazquez v.*

*Warren*, 630 F. Supp. 3d 524, 540 n.12 (S.D.N.Y. 2022) (finding that an officer's direction to

defendant to tase plaintiff, given within plaintiff's earshot, "served to warn [p]laintiff that a

tasing was coming if he did not comply"); *Whitfield v. City of Newburgh*, No. 08-cv-08516

(RKE), 2015 WL 9275695, at *17 (S.D.N.Y. Dec. 17, 2015) (finding no factual dispute as to

whether warning was issued where officer told arrestee that if he continued to fight, another

officer was going to deploy a taser).  Further, Garcia used the taser in "drive stun" mode,

Dkt. 44-10, which courts in this Circuit have acknowledged is a "less-intense option" than

using a taser in "dart mode," *see Vasquez*, 630 F. Supp. 3d at 538 (internal quotation marks

omitted) (collecting cases).  Finally, while Garcia continued to tase Plaintiff after the officers

handcuffed his right hand, the Court is mindful of the Second Circuit's guidance to "not

isolate a particular act of force by an officer if it was intertwined with other acts of force in rapid succession where there was no reasonable opportunity to re-assess." *Jones*, 963 F.3d at 236. Here, the body-worn camera footage reflects fluid and continuous resistance by Plaintiff to any efforts to place him under arrest, including after Garcia's first use of the taser, as the officers struggled to subdue Plaintiff and secure handcuffs on him while he continued to resist arrest. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (relying on video evidence in excessive force case even though it contradicted evidence offered by plaintiff); *Scoma*, 2021 WL 230295, at *9 (second taser deployment reasonable where undisputed evidence showed that plaintiff was not incapacitated by the first taser and resisted officer's directions before the second taser was deployed); *Zubrod v. Hoch*, 232 F. Supp. 3d 1076, 1091 (N.D. Iowa 2017) (denying summary judgment because continued use of taser was reasonable under the circumstances, including that the plaintiff "was never compliant and never passive and never obeyed the deputies' commands"), *aff'd*, 907 F.3d 568 (8th Cir. 2018). No reasonable juror could second-guess Garcia's split-second decisions during this chaotic struggle with Plaintiff "in circumstances that [were] tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. These factors weigh in favor of the reasonableness of Garcia's use of the taser.

An aggregate assessment of the *Graham* factors and other relevant circumstances shows that no reasonable jury could conclude that Garcia's use of the taser was unreasonable. While the crimes at issue were relatively nonsevere, a reasonable officer could have perceived Plaintiff to pose an imminent threat to the safety of officers and others, and he was actively resisting arrest by struggling with the officers as they tried to handcuff him. Moreover, Segura warned Plaintiff that a taser would be used if he did not stop struggling before Garcia used the taser in drive-stun mode. In light of these circumstances, no reasonable juror could conclude that Garcia's use of the taser was excessive force. *See Penree ex rel. Penree v. City*

*of Utica*, 694 F. App'x 30, 33 (2d Cir. 2017) (summary order) ("[I]t is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest."); *Jones*, 963 F.3d at 228 (same); *see, e.g.*, *Macleod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (summary order) (single use of taser to subdue "actively noncompliant suspect . . . who posed a real and imminent threat to the safety of the officers and any bystanders" was reasonable); *Fuentes v. Schemmer*, No.18-cv-08207 (PMH), 2023 WL 188739, at *7-8 (S.D.N.Y. Jan. 13, 2023) (granting summary judgment to officers on excessive force claim where video showed that plaintiff was resisting arrest by "repeatedly ignor[ing] police instruction, struggl[ing] with police, . . . and continu[ing] to be uncooperative"); *Dinkins v. New York*, No. 19-cv-08447 (PMH), 2021 WL 3173968, at *7 (S.D.N.Y. July 26, 2021) (no reasonable factfinder could find that the officer's use of a taser was objectively unreasonable, where, among other things, the plaintiff did not dispute that the officer issued warnings before using the taser). Therefore, Defendant Garcia is entitled to summary judgment on Plaintiff's tasing excessive force claim.[4]

Defendants' motion for summary judgment on the ground that the force used in tasing Plaintiff was reasonable is granted.

### 2. *Qualified Immunity*

Even if there was a constitutional violation, Defendants also move for summary judgment on the ground that Garcia is shielded from liability by qualified immunity. Br. at 13-15. The Court agrees.

---

[4] The Court's decision to grant summary judgment is not based on Defendants' argument that Plaintiff's taser claim should be dismissed solely because Plaintiff suffered *de minimis* injuries from being tased. Br. at 11-12. The Second Circuit has explained that "although the absence of significant injury is relevant to the question of significant force, it is not dispositive under a Fourth Amendment analysis." *Jones*, 963 F.3d at 239.

The affirmative defense of qualified immunity "shields public officials, including law enforcement officers, 'from liability for civil damages [under section 1983] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Linton*, 135 F.4th at 30 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As such, the immunity "provide[s] ample protection to all but the plainly incompetent or those who knowingly violate the law." *Wiggins v. Griffin*, 86 F.4th 987, 994 (2d Cir. 2023) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To determine whether an officer is shielded by qualified immunity, courts "engage in a two-step inquiry" and ask (1) whether "the official violated the plaintiff's statutory or constitutional right," and (2) whether "that right was 'clearly established' at the time of the challenged conduct." *Eaton v. Eastbrook*, 144. F.4th 80, 90 (2d Cir. 2025) (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016)). "[C]ourts have discretion to decide which [prong of the qualified immunity analysis] to tackle first." *Linton*, 135 F.4th at 32 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what [they are] doing violates that right." *Eaton*, 144 F.4th at 93 (alteration in original) (quoting *Linton*, 135 F.4th at 32). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk County*, 17 F.4th 342, 367 (2d Cir. 2021) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)). "A district court need not determine that there is a case 'directly on point to hold that a defendant's conduct violated a clearly established right,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Linton*, 135 F.4th at 32 (quoting *McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022)). "This requires a high 'degree of specificity,'"

*District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)), and "courts must not 'define clearly established law at a high level of generality,'" *id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

Following the Second Circuit's 2010 decision in *Tracy v. Freshwater*, "it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others," "whether such force was by pepper spray, taser, or any other similar use of significant force." *Jones*, 963 F.3d at 225-26 (citing *Tracy*, 623 F.3d at 98-99); *see also Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 69-70 (2d Cir. 2018) (explaining that "[i]t is clearly established that officers may not use a taser against a compliant or non-threatening suspect"). The Second Circuit has emphasized that its holding in *Tracy* was not limited to its context (pepper spray) and applied more broadly to "an officer's significant use of force against an arrestee who was no longer resisting and who posed no threat to the safety of officers or others — whether such force was by pepper spray, taser, or any other similar use of significant force." *Jones*, 963 F.3d at 226. Conversely, the Second Circuit's "precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest." *Id.* at 228 (quoting *Penree*, 694 F. App'x at 33).

Applying these principles, Garcia is entitled to qualified immunity because no reasonable jury could conclude that Garcia's use of the taser was objectively unreasonable. The "precedents [of this Circuit] suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest." *Jones*, 963 F.3d at 228 (quoting *Penree*, 694 F. App'x at 33). Since Plaintiff was actively resisting arrest when Garcia used the taser and there was no clearly established law that would fairly warn police

officers that a taser could not be used in the manner it was used against an actively resisting

arrestee, Garcia is entitled to qualified immunity.

      *Brown v. City of New York*, 862 F.3d 182 (2d Cir. 2017) (*Brown II*), is instructive.  In

that case, the plaintiff also refused to place her hands behind her back so that officers could

handcuff her.  *Id.* at 189.  The officers forced the plaintiff to the ground, but she still did not

offer her arms for handcuffing.  *Id.*  One officer pepper sprayed the plaintiff twice and warned

her each time that she would be pepper sprayed before using the pepper spray.  *Id.*  The

Second Circuit concluded that the officers were entitled to qualified immunity, since "[n]o

precedential decision of the Supreme Court or th[e Second Circuit] 'clearly establishe[d]' that

the actions of [the officers], viewed in the circumstances in which they were taken, were in

violation of the Fourth Amendment."  *Id.* at 190.  As in *Brown II*, Plaintiff refused to place his

hands behind his back when instructed.  He also twisted and pushed away from the officers

when they tried to handcuff him.  Moreover, Segura warned Plaintiff that he would be tased

prior to Garcia tasing him.  As in *Brown II*, no precedential decision of the Supreme Court or

the Second Circuit "clearly establishes" that Garcia's actions, viewed in light of the

circumstances in which they were taken, violated the Fourth Amendment.  Thus, qualified

immunity protects Garcia from liability.  *See Harris*, 2023 WL 2051171, at *6-7

(summarizing Second Circuit precedent between *Brown II* and a September 2020 incident and

explaining that no binding decision clearly established that an officer may not use a taser

against an arrestee who is noncompliant but nonthreatening); *Penree*, 694 F. App'x at 34

("Our precedents suggest that it is *not* excessive force to deploy tasers, after a warning,

against arrestees who are dangerous or resisting arrest." (collecting cases)); *Jones*, 963 F.3d at

228 (same).

The Second Circuit's decision in *Jones v Treubig* does not counsel otherwise. In that case, one of the arresting officers also used a taser twice in effecting the plaintiff's arrest. 963 F.3d at 220-21. The Second Circuit reversed the district court's grant of qualified immunity, emphasizing that not only did the jury find that the plaintiff was no longer resisting arrest, but also that the plaintiff had fallen down with his arms spread after the first tasing and was no longer an imminent danger to anyone. *See id.* at 237-38. Here, by contrast, Plaintiff stayed upright after being tased, did not comply with the officer's instructions to stop resisting and give them his arms, and had not yet been handcuffed. *Jones* thus does not address an arrestee like Plaintiff who was still unrestrained and noncompliant after he was tased. *See Harris*, 2023 WL 2051171, at *7 (similar); *Vasquez*, 630 F. Supp. 3d at 540 (explaining that where the plaintiff did not stop struggling despite being tased and did not comply with commands to stop resisting, no precedent established that using the taser in those circumstances violated the Fourth Amendment and "qualified immunity [thus] protect[ed] the officers' 'actions in the hazy border between excessive and acceptable force'" (quoting *Mullenix*, 577 U.S. at 18)).

Because no clearly established law established at the time of Plaintiff's arrest that the use of a taser against a noncompliant arrestee amounted to constitutionally excessive force, Garcia is entitled to qualified immunity.

### 3. *Segura's Personal Involvement and Duty to Intervene*

Defendants briefly argue that the Court should grant summary judgment in Segura's favor as to Plaintiff's tasing claim, since Segura was not personally involved. Br. at 10 & n.1. "It is well settled in this Circuit that the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)); *accord Jones v. Parmley*, 714 F. App'x 42, 46 (2d Cir. 2017) (summary order).

Personal involvement may be established by showing (1) "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or (2) indirect participation, "such as ordering or helping others to do the unlawful acts," *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001), and "may [also] arise through . . . a failure to intervene," *Taylor v. City of New York*, No. 19-cv-06754 (KPF), 2022 WL 744037, at *7 (S.D.N.Y. Mar. 11, 2022) (quoting *Patterson v. City of New York*, No. 14-cv-05330 (PKC), 2015 WL 8362702, at *2 (S.D.N.Y. Dec. 8, 2015)). "[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence," *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (citation omitted), and officers may be liable for the preventable harm caused by their failure to intervene in a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it," *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted). The Court construes Plaintiff's claim as asserting that Segura is liable for failure to intervene because he should have stopped Garcia from using excessive force against Plaintiff.

However, the Court will still grant summary judgment in favor of Segura on Plaintiff's claim of excessive force against Segura. First, a "failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012); *accord Marom v. City of New York*, No. 15-cv-02017 (PKC), 2016 WL 916424, at *19 (S.D.N.Y. Mar. 7, 2016). Since the Court has granted summary judgment in favor of Garcia on the excessive force claim predicated on the tasing, Plaintiff cannot maintain a claim against Segura for failure to

intervene in that incident.[5]  The Court grants Defendants' motion for summary judgment and

dismisses the failure to intervene claim against Segura arising from Garcia's taser

deployments.

### B.  Handcuffing

The Court next turns to Plaintiff's excessive force claim against Segura based on the

handcuffing.  Plaintiff alleges that he sustained injuries to his left hand caused by Segura's

actions during his arrest.  AC at 7.  Defendants argue that they are entitled to summary

judgment on Plaintiff's handcuffing excessive force claim because he suffered at most *de

minimis* injuries to his wrists.  Br. at 11-12.  The Court is not persuaded.

"When evaluating the reasonableness of the force employed while handcuffing a

plaintiff, the 'broad[]' question is 'whether an officer reasonably should have known during

handcuffing that his use of force was excessive.'"  *Sagesse v. City of New York*, No. 22-cv-

08414 (RA), 2024 WL 1329802, at *4 (S.D.N.Y. Mar. 28, 2024) (alteration in original)

(quoting *Cugini*, 941 F.3d at 613).  In analyzing this question, the Court considers the *Graham*

factors, as well as three "evidentiary factors" that the Second Circuit has indicated "may . . .

prove useful . . . in assessing the soundness of a handcuffing-based excessive force claim":

(1) whether "the arrestee's handcuffs were unreasonably tight," (2) whether "the defendants

---

[5] Even if the Court found a constitutional violation in regard to the tasing, it would still grant
summary judgment to Segura on this claim because the body-worn camera footage reflects
that Segura did, in fact, intervene.  After Garcia tased Plaintiff's back and Plaintiff cried out
"that's my back, too much, man," Segura said "alright, that's it," and Garcia stopped tasing
Plaintiff.  PX 13 at 2:15-2:22.  Given this evidence, and in light of the brief nature of this
incident, there is no basis in the record for a reasonable juror to find that Segura is liable for a
failure to intervene.  *See, e.g.*, *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018)
(granting summary judgment where record reflected that defendant did intervene in
codefendant's use of excessive force by telling codefendant "[a]lright, alright" after
codefendant punched plaintiff a second time, and codefendant then stopped hitting the
plaintiff).

ignored the arrestee's pleas that the handcuffs were too tight," and (3) "the degree of injury to the arrestee's wrists." *Cugini*, 941 F.3d at 612-13 (alterations adopted) (citation omitted). Thus, the degree of injury to the arrestee is only one of several factors to consider. In considering whether the force used was excessive, the Court will consider the *Graham* factors before turning to the *Cugini* evidentiary factors.

Each of the *Graham* factors weighs in Plaintiff's favor. As discussed above, Plaintiff was arrested on charges that were less severe for purposes of the *Graham* analysis. *See supra* pp. 14-15. As to whether Plaintiff posed an immediate threat to the officers' safety or was actively resisting arrest, at the time Plaintiff complained about the handcuffs, Segura's body-worn camera shows that Plaintiff was handcuffed and sitting calmly in a holding cell and was not resisting the officers. Defendants have not presented any evidence to suggest that Segura perceived Plaintiff as a threat or as resisting at this point. Thus, the *Graham* factors support Plaintiff's excessive force claim.

Likewise, the "evidentiary factors" identified in *Cugini* also favor Plaintiff. First, the evidence suggests that the "handcuffs were unreasonably tight." *Cugini*, 941 F.3d at 612 (citation omitted). Plaintiff testified that the officers did not engage the safety lock on his handcuffs and so they tightened when he got in the car. Pl. Dep. Tr. 71:23-72:13. Further, Defendants have not submitted any evidence, such as affidavits of the Individual Defendants, indicating that the officers engaged the safety lock on Plaintiff's handcuffs or checked the handcuffs to ensure they were not unreasonably tight. Finally, the hospital records indicate that when Plaintiff was transported to New York-Presbyterian, doctors noted cuff marks on his left wrist. Dkt. 44-11 at 8. Drawing all inferences in Plaintiff's favor, a reasonable jury could conclude that the handcuffs were unreasonably tight. *See Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 442, 447 (D. Conn. 2013) (denying summary judgment in part because,

based on plaintiff's statements that handcuffs kept tightening, a rational jury could find that defendant used excessive force by failing to double lock them); *White v. Brown*, No. 20-cv-00720, 2023 WL 1967081, at *6 (D. Conn. Feb. 13, 2023) (denying summary judgment, in part based on plaintiff's testimony that defendants failed to double lock his handcuffs).

Second, the evidence indicates that Segura ignored Plaintiff's "pleas that the handcuffs were too tight." *Cugini*, 941 F.3d at 612 (citation omitted). Plaintiff complained about his handcuffs being too tight in front of Segura at the precinct, when the officers left him in a holding cell. Segura BWC 33:15-33:27. The body-worn camera footage does not show any officer, including Segura, checking Plaintiff's handcuffs, nor have Defendants introduced any evidence suggesting that the officers checked Plaintiff's handcuffs.[6] *See, e.g.*, *Ketcham*, 992 F.3d at 150 (evidence suggested that officer was on notice that plaintiff's handcuffs were too tight when plaintiff testified that he complained to the officer that his handcuffs were causing him pain); *cf. Sagesse*, 2024 WL 1329802, at *5 ("Numerous courts have held that where a plaintiff complains of discomfort during handcuffing and officers take reasonable steps to alleviate the pain, the officers' continued use of handcuffing is not unreasonable." (collecting cases)).

Finally, the evidence suggests that Plaintiff sustained nerve damage to his left wrist, which he claims required him to get surgery. Plaintiff's medical records reflect that on intake, there were "[c]uff marks noted on [his] left wrist" and that there was "[l]ikely neuropraxia," or

---

[6] Plaintiff also testified in his deposition that when he got in the police car, he complained that his handcuffs were too tight because the officers had not put the safety lock on the handcuffs, so the cuffs tightened when he got in the car. Pl. Dep. Tr. 71:23-72:13. According to Plaintiff, the officers told him to "[t]ry not to move around" and "[d]on't move around so much," but did "nothing" in response to his complaint. *Id.* at 72:3-24. Plaintiff has not identified the officers to whom he complained and thus has not established Segura or Garcia's personal involvement in any constitutional violation arising from this incident.

nerve damage, in his "left wrist." Dkt. 44-11 at 8-9. The discharge summary in his medical record indicates that even though that an x-ray "revealed no evidence of fracture or even soft tissue edema," Plaintiff "reported that he noticed some [left] wrist tenderness where his hand cuff was following an abrupt movement of his body," and that the doctors "[a]dvised Tylenol, ice and compression." *Id.* at 14. Plaintiff testified that after his arrest, he spoke with his primary care physician about nerve damage to the top of his left hand and that he received surgery for nerve damage in his left arm following his arrest. Pl. Dep. Tr. 123:7-128:18. He also submitted a video, purportedly taken at his doctor's office, showing his left wrist with sutures. PX 30. In the video, Plaintiff states that he "had to have surgery on [his] wrist" "to repair the nerve damage that was done to it." PX 30 at 0:02-0:06, 0:16-0:19. Plaintiff represents that this is a "video of [the] injuries that [he] sustained from the attack by Officer Luis Segura as well as from other officers." Pl. Aff. ¶ 3. A reasonable jury could find these injuries severe. *See Usvage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) ("The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage."); *id.* at 596-97 (evidence of nerve damage from handcuffing, including doctor's note and plaintiff's deposition testimony, were sufficient evidence of an "injury that can be deemed sufficient to prevent summary judgment in excessive force cases"); *Ali v. Ramos*, No. 16-cv-01994 (ALC), 2020 WL 5817009, at *6 (S.D.N.Y. Sept. 30, 2020) (denying motion for summary judgment where plaintiff submitted evidence that he required surgery to address nerve damage from handcuffing); *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642-43 (S.D.N.Y. 2012) (plaintiff's deposition testimony that he saw his primary care physician a few days after his arrest for wrist injuries, had an MRI that showed he had torn cartilage, and attended physical therapy for several weeks to address his injury raised questions of material fact about whether plaintiff was injured from handcuffing).

There is therefore evidence from which a reasonable juror could find that Plaintiff suffered more than *de minimis* injuries, contrary to Defendants' arguments. In addition, the Second Circuit has expressly rejected the legal argument proffered by Defendants, and supported by older cases, that a plaintiff's injuries must be more than merely *de minimis* to survive a motion for summary judgment. *See id.* at 11-12 (collecting cases). In *Ketcham v. City of Mount Vernon*, a 2021 decision, the Second Circuit explained that it "ha[d] never held that a court may grant summary judgment to officers on an excessive force claim merely because the injuries were minor" and emphasized that "[a]ny such holding would violate the rule announced in *Graham* and would grant a windfall to officers who commit misconduct but could escape liability based upon the hardiness of their victims." 992 F.3d at 150-51. Thus, following *Ketcham*, courts may consider "the absence of serious injury" in assessing "the reasonableness of the force," but "should not grant summary judgment on th[at] basis alone." *Id.* at 151. As such, even if Plaintiff's injuries were undisputedly *de minimis* (which they are not), summary judgment would not be appropriate on that basis.

In sum, after examining the *Graham* and *Cugini* factors, the Court concludes that a reasonable jury could find that Segura's actions with respect to Plaintiff's handcuffs constituted excessive force and Defendants' motion for summary judgment is denied.[7]

---

[7] Though Defendants generally raise qualified immunity as a defense to all of Plaintiff's claims, they do not address the handcuffing claim. Br. at 13-16. In any event, Segura would not be entitled to qualified immunity on this record. At the time of Plaintiff's arrest, "the use of excessive force in handcuffing was prohibited by clearly established constitutional law." *Cugini*, 941 F.3d at 615; *see id.* at 616 (recognizing that before 2018, it was clearly established that tight handcuffing can constitute excessive force where the plaintiff made an explicit verbal complaint); *accord Pal v. Canepari*, No. 23-730, 2024 WL 4341360, at *2 (2d Cir. Sept. 30, 2024) (summary order) (collecting cases). The record indicates that Plaintiff made an explicit verbal complaint and that Segura "fail[ed] to loosen [his] excessively tight handcuffs." *Pal*, 2024 WL 4341360, at *2. As such, drawing all inferences in Plaintiff's favor at this point, Segura is not entitled to summary judgment on this claim based on the defense qualified immunity.

II.    **False Arrest**

In his Amended Complaint, Plaintiff claims that there was no probable cause for his arrest because Watson was not injured.  AC at 7.  The Court construes this as a false arrest claim.  Defendants move for summary judgment on Plaintiff's false arrest claim, arguing that there was probable cause for his arrest for assault based on Watson's statements to officers and a 911 call, and that, in the alternative, the officers are entitled to qualified immunity. Br. at 4-6, 15-16.  The Court agrees that Watson's statement to the officers provided probable cause (or at least arguable probable cause) for the arrest and therefore need not address the 911 call.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] . . . is substantially the same as a claim for false arrest under New York law." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (omission in original) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)).  "Probable cause to arrest is a complete defense to a false arrest claim," and "[i]f there is probable cause to arrest a plaintiff 'for *any* crime — whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest' — then a plaintiff cannot prevail." *Id.* (quoting *Kee*, 12 F.4th at 158-59).  The "probable cause analysis looks to the law of the state where the arrest and prosecution occurred," *Washington v. Napolitano*, 29 F.4th 93, 104 (2d Cir. 2022) — here, New York.

Based on the undisputed evidence in the record, the officers had probable cause to arrest Plaintiff for assault.  Probable cause exists where officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Triolo v. Nassau County*, 24 F.4th 98, 106 (2d Cir. 2022) (quoting *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019)).  Under New York law, a person commits third-degree assault when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or a third person" or "recklessly causes physical injury to another person."  N.Y. Penal Law § 120.00(1)-(2).  Physical injury is defined to include "impairment of physical condition or substantial pain." *Id.* § 10.00(9).  The Second Circuit has held that "police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  Here, the officers arrived on the scene in response to a reported assault.  Segura BWC 0:20-0:34.  When Segura spoke to Watson, Watson identified Plaintiff as his assailant, said that Plaintiff punched him in the face and neck, and stated that he was in pain.  Segura BWC 1:30-1:47.  Segura and Garcia were entitled to rely on that identification in making the arrest, since "[a] victim's identification of an assailant is, by itself, sufficient 'probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.'" *Virgil v. Town of Gates*, 455 F. App'x 36, 38 (2d Cir. 2012) (summary order) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *see also O'Brien v. City of Yonkers*, No. 07-cv-03974 (KMK) (LMS), 2013 WL 1234966, at *9 (S.D.N.Y. Mar. 22, 2013) ("[C]ourts have consistently found probable cause to exist as a matter of law without a sworn statement when a putative victim gives his or her statement directly to an officer." (collecting cases)).

The Court is unpersuaded by Plaintiff's argument that the officers lacked probable cause because Watson was uninjured. AC at 7. First, New York law defines "physical injury" as encompassing "substantial pain," not just "impairment of physical condition," N.Y. Penal Law § 10.00(9). Based on Watson's statement that he had been punched in the face and was in pain, no reasonable jury could find that the officers lacked probable cause to arrest Plaintiff for assault. Second, Segura observed injuries — namely, swelling on Watson's neck — consistent with Watson's version of events. *See* PX 18. This, combined with Watson's identification of Plaintiff as his attacker, also established probable cause to arrest Plaintiff for assault. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (probable cause established by victim's plausible version of events and visible injuries).

Plaintiff has, at various points, claimed that he has witnesses that will prove his innocence. *See* Pl. RSUF ¶ 26; Segura BWC 1:59-2:14. This does not rescue his false arrest claim. The Second Circuit has been clear that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (alteration in original) (quoting *Ricciuti*, 124 F.3d at 128); *accord Washington*, 29 F.4th at 105; *MacNeal v. City of New York*, No. 23-cv-05890 (LGS), 2025 WL 640666, at *7 (S.D.N.Y. Feb. 27, 2025). Given Watson's description of events, identification of Plaintiff as his attacker, and visible injuries consistent with his account, the officers were not required to explore and eliminate Plaintiff's claims of innocence before making an arrest. *See Ricciuti*, 124 F.3d at 128 (officer did not have to make further inquiries once plaintiff protested his innocence, since probable cause was established by victim's plausible version of events and visible injuries); *Walston v. City of New York*, 289 F. Supp. 3d 398, 408 (E.D.N.Y. 2018) (where officer observed injuries consistent with the

victim's account, plaintiff was known to the victim, and the victim identified plaintiff as her

assailant, officer had "no reason" to doubt the veracity of the victim's account and officer

"was entitled to rely on the information provided by [the victim], as corroborated by the

physical evidence, as establishing probable cause"), *aff'd*, 754 F. App'x 65 (2d Cir. 2019)

(summary order).

Defendants also assert that Segura and Garcia are entitled to qualified immunity

because there was, at a minimum, arguable probable cause for Plaintiff's arrest.  Br. at 15-16.

"An arresting officer is entitled to qualified immunity even if probable cause is lacking 'so

long as "arguable probable cause" was present when the arrest was made.'"  *Washington*, 29

F.4th at 105 (quoting *Figueroa*, 825 F.3d at 100).  "A police officer has arguable probable

cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause

existed, or (b) officers of reasonable competence could disagree on whether the probable

cause test was met.'"  *Id.* (quoting *Figueroa*, 825 F.3d at 100). "Put another way, an arresting

officer will find protection under the defense of qualified immunity unless 'no reasonably

competent officer' could have concluded, based on the facts known at the time of arrest, that

probable cause existed."  *Figueroa*, 825 F.3d at 100 (quoting *Malley*, 475 U.S. at 341).

The standard for qualified immunity is met here.  The record evidence establishes that

it was objectively reasonable for the officers to believe that probable cause existed or at the

very least reasonable officers could disagree as to whether there was probable cause based on

Watson's identification of Plaintiff and observations at the scene.  *See, e.g.*, *Ricciuti*, 124 F.3d

at 128 (officer entitled to qualified immunity for false arrest, since a reasonable officer could

believe it was objectively reasonable to arrest plaintiff for assault based on the victim's

version of events and injuries, despite plaintiff's protestations of innocence); *O'Brien*, 2013

WL 1234966, at *11-12 (granting summary judgment on false arrest claim, since even if there

were reasons to doubt the victim's veracity, "reasonable officers could differ as to whether the victim's in-person identification of Plaintiff nonetheless provided probable cause"); *Iocovello v. City of New York*, No. 14-cv-04949 (KPF), 2016 WL 7223413, at *6-8 (S.D.N.Y. Dec. 13, 2016) (arguable probable cause to arrest present based on victim's account and identification of plaintiff as his attacker, despite plaintiff's assertion of innocence), *aff'd*, 701 F. App'x 71 (2d Cir. 2017) (summary order).  As such, the Individual Defendants are entitled to qualified immunity on Plaintiff's false arrest claim.

Because Watson's account of the incident established probable cause (or, at a minimum, arguable probable cause), the Individual Defendants are entitled to summary judgment on Plaintiff's false arrest claim.

## III.    Malicious Prosecution

Plaintiff alleges that Garcia and Segura "refuse[d] to leave [him] alone until [they] had something to arrest [him] on," which the Court construes as a malicious prosecution claim. AC at 7.  Defendants move for summary judgment on this claim, contending that there was probable cause to support Plaintiff's prosecution and that the Individual Defendants are entitled to qualified immunity.  Br. at 6-9, 15-16.

Although prosecutors, not police, litigate criminal proceedings against defendants, "a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'"  *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (alteration in original) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)).  To prevail on a malicious prosecution claim under section 1983 and New York law, "a plaintiff must show '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in

favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] . . .

(4) actual malice, . . . [and] (5) a sufficient post-arraignment liberty restraint to implicate the

plaintiff's Fourth Amendment rights.'"  *Alexander*, 132 F.4th at 158 (first alteration in

original) (first quoting *Kee*, 12 F.4th at 161-62; and then quoting *Rohman v. N.Y.C. Transit

Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000)).  Further, "unlike Fourth Amendment

claims of false arrest, in the Fourth Amendment malicious prosecution context, probable

cause must support *each* charge brought by the prosecution."  *Id.*

      Defendants do not dispute that Plaintiff can show the first, second, and fifth elements

of his malicious prosecution claim, and instead contend that the Court should grant summary

judgment in their favor because probable cause existed for each of the charges against

Plaintiff.[8]  *See* Br. at 6-9.  Plaintiff was charged with two counts of assault in the third degree,

attempted assault in the third degree, harassment in the second degree, aggravated harassment

in the second degree, and resisting arrest.  *See* Dkt. 44-8.[9]

      "Probable cause, in the context of malicious prosecution, has . . . been described as

such facts and circumstances as would lead a reasonably prudent person to believe the

---

[8] Indeed, the record supports the first, second, and fifth elements of Plaintiff's claim.
Plaintiff's arraignment commenced the criminal proceeding against him, and those
proceedings terminated in his favor when the charges against him were dismissed on speedy
trial grounds.  *See Kee*, 12 F.4th at 165 (affirming that "a speedy trial dismissal is generally a
favorable termination for purposes of a malicious prosecution claim under Section 1983");
*Alexander*, 132 F.4th at 159 (plaintiff's "arraignment . . . constituted a criminal proceeding for
the purposes of malicious prosecution").  Further, since the Criminal Court ordered that
Plaintiff be released on his own recognizance, *see* Dkt. 44-8 at 2, the evidence supports that
Plaintiff was subject to a sufficient post-arraignment liberty restraint implicating his Fourth
Amendment rights.  *See Rohman*, 215 F.3d at 216 (holding pretrial release on recognizance
was a sufficient post-arraignment restriction).

[9] Defendants do not discuss the attempted assault or harassment charges, and instead address
obstruction of governmental administration in the second degree, even though the record does
not reflect that Plaintiff was ever arrested for or charged with that crime.  *See* Br. at 7-9;
Dkts. 44-7, 44-8.

plaintiff guilty," *Kee*, 12 F.4th at 166 (omission in original) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)), and "probable cause to prosecute should not be conflated with probable cause to arrest," *id.*  However, "[i]f probable cause existed at the time of an arrest, it continues to exist at the time of prosecution unless it is undermined 'by the discovery of some intervening fact.'" *Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *2 (2d Cir. Nov. 21, 2023) (summary order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

The Court begins with the third-degree assault charges.  As noted above, Segura and Garcia had probable cause to arrest Plaintiff based on Watson's account of the incident, injuries corresponding to that account, and his identification of Plaintiff as his attacker.  Since probable cause existed at Plaintiff's arrest, "it continues to exist at the time of prosecution unless it is undermined by the discovery of some intervening fact." *Manzi v. Goldfine*, No. 23-cv-05176 (PMH), 2024 WL 2943876, at *5 (S.D.N.Y. June 10, 2024) (quoting *Malarcyzk*, 2023 WL 8073099, at *2).  Having reviewed the entire record, nothing indicates that after Plaintiff's arrest, Garcia or Segura discovered any information that would have caused probable cause to dissipate.  After Segura placed Plaintiff in the back of the police vehicle, Segura spoke with Watson, who repeated his earlier account of the incident, as well as an employee of the apartment building, who told Segura that he had observed an ongoing dispute between Plaintiff and Watson that had "finally escalated to this."  Segura BWC 7:50-8:56.  These statements confirmed or were at least consistent with Watson's version of events and were not "sufficient to 'dissipate' the probable cause that existed at the time" of Plaintiff's arrest. *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (summary order); *see,*

*e.g.*, *Harrison v. County of Nassau*, 804 F. App'x 24, 28 (2d Cir. 2020) (summary order)
(affirming summary judgment where plaintiff did not "cite any evidence or other information
the prosecutors may have known between the time of his June 11, 2012 arrest and his
arraignment (or thereafter) that raises a genuine dispute of material fact as to the continued
existence of probable cause"); *Torres v. City of New York*, No. 21-cv-02154 (ARR) (MMH),
2025 WL 590703, at *7 (E.D.N.Y. Feb. 24, 2025) (dismissing malicious prosecution claim
where there was probable cause for the initial arrest based on the victim's positive
identification and the "[p]laintiffs ha[d] not identified any 'intervening facts' that were
revealed during the brief window between the arrest and the filing of charges"); *Keith*, 641 F.
App'x at 68 (victim's post-arrest repeated identification of plaintiff strengthened the
determination that arguable probable cause existed).  Defendants accordingly had probable
cause to prosecute Plaintiff for third-degree assault.

Similarly, Segura and Garcia had probable cause to prosecute Plaintiff for attempted
assault in the third degree.  Under New York law, "[a] person is guilty of an attempt to
commit a crime when, with intent to commit a crime, he engages in conduct which tends to
effect the commission of such crime."  N.Y. Penal Law § 110.00.  "Conduct which 'tends to
effect' the commission of a crime means conduct which comes dangerously close or very near
to the completion of the intended crime."  *People v. Chavez*, 972 N.Y.S.2d 858, 864 (Crim.
Ct. 2013).  Watson's report that Plaintiff punched him in the head supported probable cause
for attempted assault.  *Cf. People v. Allen*, 957 N.Y.S.2d 265, 2012 WL 3139757, at *1 (App.
Term. 2012) (unpublished table decision) (accusatory instrument sufficiently alleged
attempted assault in the third degree where it alleged that the defendant punched the victim in
the head and neck, "caus[ing] [the victim] to suffer pain" (second alteration in original) (citing
N.Y. Penal Law §§ 110.00, 120.00(1))).  As with the third-degree assault charges, the Court's

review of the record reveals nothing that would have caused probable cause to dissipate between Plaintiff's arrest and arraignment. Thus, the Individual Defendants had probable cause to prosecute Plaintiff for attempted assault in the third degree.

The Court turns next to the second-degree aggravated harassment charge. Under New York law, "a person is guilty of aggravated harassment in the second degree when: . . . [w]ith the intent to harass, annoy, threaten or alarm another person, he or she strikes, shoves, kicks or otherwise subjects another person to physical contact thereby causing physical injury to such person." N.Y. Penal Law § 240.30(4). Here, Watson's report of his altercation with Plaintiff also established probable cause for second-degree aggravated harassment. Plaintiff has not identified any intervening evidence that dissipated probable cause between Plaintiff's arrest for aggravated harassment and his arraignment.

There was also probable cause to arrest and prosecute Plaintiff for second-degree harassment. Under New York law, "a person is guilty of harassment in the second degree when, with intent to harass, annoy, or alarm another person: . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. Penal Law § 240.26(1). The New York Court of Appeals has explained that the "crux of section 240.26(1) is the element of physical contact: actual, attempted or threatened," and that the statute covers "petty forms of offensive touching" that do not rise to the level of assault. *People v. Bartkow*, 749 N.E.2d 158, 159 (N.Y. 2001); *accord Smith v. City of New York*, No. 18-cv-05079 (MKV), 2021 WL 4267525, at *12 (S.D.N.Y. Sept. 20, 2021). Based on Watson's account of his altercation with Plaintiff, it would not have been unreasonable for the officers to believe that Plaintiff punched Watson to "harass, annoy, or alarm" him. *See Williams v. City of New York*, No. 14-cv-02191 (ARR), 2016 WL 9022589, at *5 (E.D.N.Y. Mar. 24, 2016) (finding that accusations of plaintiff biting a person's finger,

which had caused pain, created "probable cause to arrest plaintiff for harassment, if not assault"). As with the other charges, nothing in the record would have caused probable cause to dissipate between arrest and arraignment, and thus probable cause existed to prosecute Plaintiff for second-degree harassment.

Finally, probable cause existed to prosecute Plaintiff for resisting arrest. Under New York law, "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. "A key element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause." *People v. Jensen*, 654 N.E.2d 1237, 1240 (N.Y. 1995). As explained above, the officers had probable cause to arrest Plaintiff for, among other things, third-degree assault, and as a consequence, his arrest was authorized. In addition, the undisputed evidence, including the body-worn camera footage, indicates that Plaintiff resisted arrest by, at a minimum, refusing to put his hands behind his back for handcuffing. Thus, it was objectively reasonable for the officers to believe that there was probable cause. *See, e.g.*, *Smith*, 2021 WL 4267525, at *12 (probable cause existed to arrest where defendants presented evidence that plaintiff, among other things, tensed his arms and resisted being placed in handcuffs); *Benny v. City of Long Beach*, No. 20-cv-01908 (KAM) (ST), 2022 WL 2967810, at *16-18 (E.D.N.Y. July 27, 2022) (probable cause existed for arrest and prosecution for resisting arrest where video showed officers and plaintiff scuffling and pushing at one another after officers stated their intention to put plaintiff under arrest).

Defendants also argue that Garcia and Segura are entitled to qualified immunity for Plaintiff's false arrest claims and that the Court can also grant summary judgment in their favor on that ground. Br. at 15-16. The standard for qualified immunity for a malicious

prosecution claim is identical for that for a false arrest claim: "an arresting officer is entitled to qualified immunity if '(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)); *see also Washington*, 29 F.4th at 105 (same); *Collier v. City of Mount Vernon*, No. 19-cv-05230 (KMK), 2024 WL 4043135, at *9 (S.D.N.Y. Sept. 4, 2024) (same); *Garnes v. City of New York*, No. 22-cv-01769 (ER), 2025 WL 605466, at *7 (S.D.N.Y. Feb. 25, 2025) (same). Here, based on the body-worn camera footage recording Watson's recollection of events and Plaintiff's interactions with the arresting officers, the Court concludes that it was objectively reasonable for the officers to believe that there was probable cause and that at the very least reasonable officers could disagree about whether there was probable cause to prosecute Plaintiff for the crimes for which he was arrested and with which he was charged. As such, Garcia and Segura are protected by qualified immunity.

Because no reasonable juror could find that there was not probable cause — or, at the very least, arguable probable cause — for each of the charges against Plaintiff, the Court grants summary judgment in favor of Garcia and Segura as to Plaintiff's malicious prosecution claim.

## IV.    Claims Against the City

Plaintiff has named the City as a Defendant. *See* AC at 1. Though none of the allegations in the AC discuss the City's role in the alleged constitutional violations, the Court construes this as a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that

(2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

The City is entitled to summary judgment as to Plaintiff's false arrest and malicious prosecution claims because Plaintiff has not prevailed on his claims against the Individual Defendants. "Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Since the Court has found that Plaintiff's tasing excessive force, false arrest, and malicious prosecution claims are not viable, he cannot sustain *Monell* claims based on them. *See Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) (summary order) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to *Monell* . . . must also fail." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))); *see, e.g.*, *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 172 (E.D.N.Y. 2010) (where individual defendant was entitled to summary judgment on false arrest and malicious prosecution claims, plaintiff could not sustain *Monell* claims for false arrest or malicious prosecution).

The City is also entitled to summary judgment on all of Plaintiff's *Monell* claims because he has "proffered no evidence to show that the [alleged constitutional violations] occurred pursuant to a city policy or practice." *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). At most, he has identified a single incident of a constitutional violation involving tight handcuffing, but even assuming such a violation occurred, the Supreme Court

has been clear that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[] [that] . . . can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion); *see also, e.g.*, *Torres*, 2025 WL 590703, at *9 ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (alteration in original) (citation omitted)). Having reviewed the record, there is no evidence from which a rational jury could find that the City had a policy or custom of placing unreasonably tight handcuffs on arrestees and ignoring their requests for help. Thus, the City is entitled to summary judgment on Plaintiff's *Monell* claims.

## V.   Remaining Defendants

Defendants note that Defendants Feliz and Albanludena were never served with the summons and complaint, and argue in a footnote that therefore neither are proper defendants in this matter. Df. SUF at 1 n.2. Plaintiff has not responded to this argument or otherwise indicated that he intends to proceed with claims against these Defendants.

However, because Plaintiff has proceeded IFP, he is entitled to service by the Marshals. Dkt. 7 at 1-2. The Court has not yet directed service of Feliz and Albanludena by the Marshals and therefore dismissal is not warranted for untimely service. *See, e.g.*, *Jaiyeola v. Carrier Corp.*, 73 F. App'x 492, 494 (2d Cir. 2003) (summary order) (district court improperly dismissed *pro se* plaintiff's complaint for failure to serve, in part because failure of service was attributable to Marshals' delay in informing plaintiff that an attempt to serve was unsuccessful); *Husowitz v. American Postal Workers Union*, 190 F.R.D. 53, 57-58 (E.D.N.Y. 1999) (delay of Marshals Service in serving defendants constituted good cause where plaintiff was *pro se*, proceeding IFP, and was entitled to rely on service by the United

States Marshals); *Jones*, 182 F. Supp. 3d at 144 ("Where pro se plaintiffs reasonably rely on various arms of the Court during the service process but those actors fail to carry out their duties, courts have found 'good cause' for service failures."). Moreover, Defendants have not argued that Albanludena or Feliz would be prejudiced by an extension of time to effect proper service, and the Court struggles to see any prejudice to these defendants, other than some brief delay, since they are also employed by New York City. *See Goonewardena v. Spinelli*, No. 15-cv-05239 (MKB) (ST), 2017 WL 4280549, at *9 (E.D.N.Y. Sept. 26, 2017) ("[T]here is little prejudice, if any, to [defendants] because they are both employed by New York State and represented by the New York State Attorney General's Office, which has been served with process and is actively defending the litigation on behalf of [other defendants]."); *Jones v. Westchester County*, 182 F. Supp. 3d 134, 145 (S.D.N.Y. 2016) ("Indeed, in cases like this, where all defendants are employed by a common employer . . . , it is unclear what prejudice unserved defendants may suffer.").

Therefore, the Court will direct that service be made upon Police Officer Feliz and Albanludena if Plaintiff informs the Court by **September 2, 2025** that he wishes to proceed with claims against these officers. If Plaintiff does not so indicate, these defendants will be dismissed from the case.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and dismissed in part. The Court GRANTS the motion for summary judgment as to Plaintiff's tasing excessive force, false arrest, and malicious prosecution claims against Garcia and Segura; and Plaintiff's *Monell* claims against the City. The Court DENIES the motion for summary judgment as to Plaintiff's handcuffing excessive force claim against Segura. The

Clerk of Court is respectfully directed to terminate the motion at Dkt. 43 and to terminate the

City of New York and Garcia from this action.

Dated:  August 15, 2025
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge